UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

MICHAEL ORR,

    Plaintiff,

    v.     CAUSE NO. 3:23-CV-1122-DRL-AZ

WEXFORD OF INDIANA, LLC *et al.*,

    Defendants.

OPINION AND ORDER

Michael Orr, a prisoner without a lawyer, filed a complaint. ECF 1. "A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quotations and citations omitted). Under 28 U.S.C. § 1915A, the court still must review the merits of a prisoner complaint and dismiss it if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against an immune defendant.

Mr. Orr reports that he suffers from numerous mental health problems. He has been diagnosed with posttraumatic stress disorder, generalized anxiety disorder, anti-personality disorder, narcissistic personality disorder, and major depression. Since 2012, Mr. Orr has been housed either in segregation or specialized mental health units due to behaviors related to his mental health problems. He has been prescribed a variety of medications for his conditions, including Zoloft, Tofranil, Celexa, Remeron, and Effexor. Mr. Orr was transferred to the Westville Control Unit (WCU) on October 6, 2017. That

same month, he was diagnosed with major depression. He reports that his major depression impacted his ability to eat, drink, sleep, think, concentrate, and take care of himself. The WCU offers specialized mental health housing programs and services, and Mr. Orr reports that he was qualified to participate in those services. However, Gary Durak excluded him from these services because of his disability. He further alleges that Commissioner Carter, Warden John Galipeau, and Wexford of Indiana, LLC failed to accommodate his mental disability.

On April 16, 2019, Dr. Barbara Eichman abruptly stopped giving Mr. Orr Effexor. Mr. Orr was accused of hoarding the medication and refusing to participate in a visit with Dr. Eichman. Mr. Orr had taken this medication for four years. Mr. Orr faults Dr. Eichman for not tapering him off the medication. He further faults Dr. Eichman for not meeting with him face-to-face that day, either to obtain his consent or to verify he was refusing care.

When Mr. Orr stopped taking the medication, he began having headaches, flashes in his head, and electrical shocks in his head. He indicates he suffered for several months. He became suicidal and homicidal. He had sleep disturbances, racing thoughts, impulsivity, and extreme anger. He was forced to sleep on concrete or iron bed frames. He believes that Mr. Usdowski, Michelle Boren, Dr. Eichman, Dr. Monica Wala, Dr. Durak, Warden Galipeau, Mr. Smiley, Mr. Lewis, and Mr. Salyer each did this to deter him from reporting suicidal or homicidal thoughts.

Mr. Orr is also suing Michelle Boren and Mr. Usdowski for refusing to help him regain access to his medication. They said that three members of the correctional staff

reported that he was hoarding medication and refused his visit with Dr. Eichman on April 16, 2019. Over the next 21 months, Mr. Usdowski continued to refuse to assist Mr. Orr with getting back on his medication. Mr. Usdowski insisted Mr. Orr comply with weekly rounds and monthly out-of-cell sessions. Mr. Orr alleges that this treatment was a substantial departure from accepted professional judgment, practice, and standards. He further alleges that Michelle Boren, Dr. Durak, and Dr. Wala didn't base their treatment decisions on their professional judgment. Mr. Orr's complaint seeks both monetary damages and injunctive relief.[1]

Mr. Orr has raised each of the allegations in his complaint before, and the court determined that they didn't state a claim. In *Orr v. Carter*, 3:19-CV-1067-RLM-MGG, Mr. Orr sued Correctional Officer Canzoneri, Correctional Officer James Early, Michelle Boren, Dr. Barbara Eichman, Mark Sevier, Dr. Wala, Warden Galipeau, Correctional Officer Smiley, Captain Lewis, Correctional Officer Salyer, Commissioner Carter, Gary Durak, Mr. Richard Usdowski, and Wexford of Indiana. He was permitted to proceed on excessive force claims against Correctional Officer Canzoneri and Correctional Officer James Early, but all other defendants were dismissed.

Mr. Orr alleged that Dr. Barbara Eichman suddenly stopped his Effexor on April 16, 2019, due to alleged hoarding of his medication and refusal to participate in a psychiatric appointment. ECF 17 at 6. He asserted that Dr. Eichman should've obtained

---

[1] Mr. Orr asks the court to permanently enjoin the defendants to require that they accommodate his mental disability throughout his incarceration. He also seeks injunctive relief related to the conditions of confinement and lack of access to programs at WCU. Mr. Orr, however, is no longer housed at WCU, so these requests are moot.

3

a blood sample to determine if he was taking the medication, and that she should've weaned him off the medication instead of stopping it abruptly. He reported the same symptoms from stopping the medication: headaches, flashes in the head, electrical shocks in the head, suicidal and homicidal thoughts, sleep disturbances, racing thoughts, anger, and impulsivity. He asserted that Ms. Boren should've advocated for him to be put back on the medication because the correctional officers were lying. And, he complained that he was forced to undergo psychotherapy without medication. The court made the following findings on these claims:

> These allegations don't support an inference that Dr. Eichman knew that the allegations of correctional staff were false or that she acted without medical judgment when she discontinued Mr. Orr's medication. Accordingly, he can't proceed against Dr. Eichman. Nor can he proceed against Ms. Boren on this claim, because "public employees are responsible for their own misdeeds but not for anyone else's." See Burks v. Raemisch, 555 F.3d 592, 594 (7th Cir. 2009). "Only persons who cause or participate in the violations are responsible." George v. Smith, 507 F.3d 605, 609 (7th Cir. 2007). It was Dr. Eichman that decided to discontinue Mr. Orr's medication, not Ms. Boren. There is no basis for holding Ms. Boren liable for a decision that Dr. Eichman made.

ECF 17 at 7.

He asserted that the care he was receiving from Mr. Usdowski was constitutionally inadequate. The court found that there weren't facts from which it could be plausibly inferred that Mr. Usdowski's care of Mr. Orr substantially deviated from accepted professional judgment. *Id.* at 8-9.

Mr. Orr complained about the care he received from Dr. Durak and Dr. Wala. The court found those allegations conclusory and found that "Mr. Orr hasn't alleged specific

4

facts from which it can be inferred that either Dr. Durak or Dr. Wala were deliberately indifferent to his mental health needs." *Id.* at 9.

Mr. Orr complained about a team of health professionals that met weekly to discuss his care. That team included Mr. Usdowski, Ms. Boren, Dr. Eichman, Dr. Wala, Dr. Durak, Warden Galipeau, Correctional Officer Smiley, Captain Lewis, and Correctional Officer Salyer. He complained that they repeatedly made him sleep on a concrete floor or iron bed frame. He asserted that it was to "deter and intimidate him from feeling suicidal." *Id.* As to this claim, the court made the following findings:

> The Eighth Amendment prohibits conditions of confinement that deny inmates "the minimal civilized measure of life's necessities." Townsend v. Fuchs, 522 F.3d 765, 773 (7th Cir. 2008) (citations omitted). In evaluating an Eighth Amendment claim, courts conduct both an objective and a subjective inquiry. Farmer v. Brennan, 511 U.S. 825, 834 (1994). The objective prong asks whether the alleged deprivation is "sufficiently serious" that the action or inaction of a prison official leads to "the denial of the minimal civilized measure of life's necessities." Id. (citations omitted). Although "the Constitution does not mandate comfortable prisons," Rhodes v. Chapman, 452 U.S. 337, 349 (1981), inmates are entitled to adequate food, clothing, shelter, bedding, hygiene materials, and sanitation. Knight v. Wiseman, 590 F.3d 458, 463 (7th Cir. 2009); Gillis v. Litscher, 468 F.3d 488, 493 (7th Cir. 2006). On the subjective prong, the prisoner must show the defendant acted with deliberate indifference to the inmate's health or safety. Farmer v. Brennan, 511 U.S. at 834. Mr. Orr hasn't alleged facts from which it can be plausibly inferred that the deprivation of bedding was the result of deliberate indifference to his safety; rather, the defendants appeared to be acting with his safety in mind – to prevent him from engaging in self-harm. Therefore, these allegations do not state a claim upon which relief can be granted.

*Id.* at 9-10.

Mr. Orr sued Commissioner Carter and Wexford of Indiana for having policies that resulted in receipt of inadequate mental health care. Regarding these claims, the court noted the following:

5

> Mr. Orr's complaint doesn't allege facts that plausibly suggest that either Wexford or Commissioner Carter has a policy of considering cost savings to the exclusion of reasonable medical judgment, so Mr. Orr can't proceed on his claim regarding cost savings. See <u>Bissessur v. Indiana Univ. Bd. of Trs.</u>, 581 F.3d 599, 602 (7th Cir. 2009). Similarly, his complaint doesn't allege facts from which it can be plausibly inferred that Wexford or Commissioner Carter encourage the use of treatment known to be ineffective in treating anxiety. Mr. Orr's remaining allegations – that there are policies of denying mental health exams to inmates in WCU while disciplinary matters are pending and encouraging medical staff to downplay and misdiagnose mental health conditions of inmates in segregation status all to inappropriately prolong the inmates' stay in restrictive housing – also do not state a claim. Mr. Orr hasn't plausibly alleged facts from which it can be inferred that such policies exist. There are no facts from which it can be inferred that the medical staff caring for Mr. Orr acted pursuant to policies of either Wexford or the Commissioner rather than their own personal decisions. See <u>Roe v. Elyea</u>, 631 F.3d at 863. Mr. Orr can't proceed against Wexford and Commissioner Carter.

*Id.* at 10-11. The court denied Mr. Orr's request for injunctive relief because the excessive force claim he was proceeding on involved a discrete incident and because Mr. Orr was no longer housed at the WCF. *Id.* 12-13.

"A fundamental precept of common-law adjudication, embodied in the related doctrines of collateral estoppel and res judicata, is that a right, question or fact distinctly put in issue and directly determined by a court of competent jurisdiction. . . cannot be disputed in a subsequent suit between the same parties or their privies[.]" *Ross v. Bd. of Educ. of Tp. H.S. Dist. 211*, 486 F.3d 279, 282 (7th Cir. 2008) (citation and quotations omitted). These companion doctrines "protect against the expense and vexation attending multiple lawsuits, conserve judicial resources, and foster reliance on judicial action by minimizing the possibility of inconsistent decisions." *Taylor v. Sturgell*, 553 U.S. 880, 892 (2008). For *res judicata* to apply here—when the earlier judgment was entered by

6

a federal court—there must be "(1) identity of the claim, (2) identity of parties, which includes those in 'privity' with the original parties, and (3) a final judgment on the merits." *Ross*, 486 F.3d at 282. "Under res judicata, a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Barr v. Bd. of Trustees of W. Illinois Univ.*, 796 F.3d 837, 839 (7th Cir. 2015) (quoting *Allen v. McCurry*, 449 U.S. 90, 94 (1980)).

Here, Mr. Orr's prior case named each of the defendants named in this lawsuit and arose out of the same facts. The court determined that Mr. Orr didn't state a claim against any of these defendants on May 3, 2021, and a final judgment was entered on August 30, 2023. *Orr v. Carter,* 3:19-CV-1067-RLM-MGG (ECF 17; 127). Therefore, it appears that this case is barred by the doctrine of *res judicata*.

Additionally, it is malicious to sue the same defendants for the same events in two cases. *See Lindell v. McCallum*, 352 F.3d 1107, 1109 (7th Cir. 2003) (suit is "malicious" for purposes of Section 1915A if it is intended to harass the defendant or is otherwise abusive of the judicial process).

Furthermore, Mr. Orr's claims are subject to Indiana's two-year statute of limitations. *Behavioral Inst. of Ind., LLC v. Hobart City of Common Council*, 406 F.3d 926, 929 (7th Cir. 2005). Although the statute of limitations is an affirmative defense, dismissal is appropriate when the complaint makes clear that the claims are time-barred. *Cancer Foundation, Inc. v. Cerberus Capital Mgmt.*, LP, 559 F.3d 671, 674 (7th Cir. 2009). Mr. Orr is suing about events that took place on April 16, 2019, with some claims continuing for

approximately twenty-one months, until January 2021. He didn't file this lawsuit until December 2023.

For these reasons, this court:

(1) ORDERS Mr. Orr to SHOW CAUSE by **November 8, 2024**, why

a. this action shouldn't be dismissed as barred by the doctrine of *res judicata* because each of the claims raised in his complaint was or could've been raised in *Orr v. Carter,* 3:19-CV-1067-RLM-MGG;

b. this action shouldn't be dismissed as malicious; and

c. this action shouldn't be dismissed as barred by the statute of limitations; and

(2) CAUTIONS Mr. Orr that, if he doesn't respond by the deadline, this case will be dismissed without further notice pursuant to 28 U.S.C. § 1915A because it's barred by res judicata, malicious, and barred by the statute of limitations.

SO ORDERED.

October 11, 2024                      *s/ Damon R. Leichty*
                                                                  Judge, United States District Court